# Exhibit C

(Complaint)

## IN THE CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

JILL C. BARBER

    Plaintiff,

v.

CIVIL ACTION NO.: 17-C-130

JUDGE: /s/ ALFRED E. FERGUSON

RESTORIXHEALTH, LLC,
formally known as
CANDESCENT HEALING, LLC,
also known as St. Mary's Regional Wound Center.

FILED 2017 FEB 27 PM 3:40
J.E. HOOD
CIRCUIT CLERK
CABELL COUNTY

COPY

## COMPLAINT

COMES NOW the Plaintiff, Jill C. Barber, by counsel, James D. McQueen, Jr. and Anthony E. Nortz, of McQueen Davis, PLLC, and for her causes of action against the Defendant, RestorixHealth, LLC, formally known as Candescent Healing, LLC, also known as St. Mary's Regional Wound Center, the Plaintiff states as follows:

### PARTIES, JURISDICTION, VENUE AND FACTS

1. Plaintiff Jill C. Barber is a resident of Huntington, Cabell County, West Virginia.

2. Defendant RestorixHealth, LLC is a Delaware Corporation, with its principal office in White Plains, Westchester County, New York.

3. Defendant RestorixHealth, LLC is licensed to do business and at all relevant times was doing business in the State of West Virginia.

4. In July of 2014, Candescent Healing, LLC, was merged with, and became RestorixHealth, LLC.

1

5. RestorixHealth, LLC, at all material times rented office space from St. Mary's Medical Center, located in Huntington, Cabell County, West Virginia, where it currently operates under the name "St. Mary's Regional Wound Center".

6. RestorixHealth, LLC, Candescent LLC, and St. Mary's Regional Wound Center are hereinafter referred to as "Restorix".

7. Plaintiff Jill C. Barber was a patient at Restorix on November 5, 2013, and continued to be a patient through December of 2013, treating for an open wound located on her right forearm.

8. Plaintiff Jill C. Barber is also the Plaintiff in a federal fraud lawsuit (Civil Action No.: 3:14-cv-27349) against Defendant Sedgwick Claims Management Services, Inc. (hereinafter "Sedgwick") a third-party administrator, handling workers compensation claims for Family Dollar Stores of West Virginia, Inc.

9. During the course of discovery in the abovementioned suit, Plaintiff's counsel obtained an internal documenting log from Sedgwick referred to as "JURIS", containing documentation of all correspondence, including telephone calls, regarding Jill C. Barber's workers' compensation claim.

10. Listed in the JURIS log on March 4, 2014, there is an entry nothing that Sedgwick claims adjuster called the office of Dawn MacFarland, M.D., who was a physician at the St. Mary's Regional Wound Center (Restorix) in regards to a letter authored by Dr. MacFarland, requesting certain treatment for the Plaintiff.

11. Upon calling the Wound Center, the Sedgwick claims adjuster, Iryna Slotylo-Shumylo documents in the JURIS log that she spoke to "Kristina" regarding the letter from Dr. MacFarland.

2

12. Mrs. Slotylo-Shumylo then documents in the JURIS log that she was advised that the Plaintiff has been seen by different physicians at St. Mary's Hospital, and that "they believe it is more psychological and no one wants to see her". Later in the same entry, it is documented that the claims adjuster is advised that "there is nothing they can do, they believe it is self-inflicting." Attached hereto is the excerpt of the JURIS entry, marked as Exhibit 1.

13. These statements to Mrs. Slotylo-Shumylo contain confidential information as defined under W.Va. Code §27-3-1.

14. These statements to Mrs. Slotylo-Shumylo contain confidential information that is not appropriate to be disclosed by Restorix under W.Va. Code §23-4-7.

15. The statements to Mrs. Slotylo-Shumylo are related to Plaintiff's mental health, not related to Plaintiffs occupational injury and were unrelated to Plaintiff's written medical records provided to Segwick.

16. These statements to Mrs. Slotylo-Shumylo by Restorix employee's disclosed medical information in violation of a physician – patient privilege of confidentiality.

17. Mrs. Barber never waived her physician – patient privilege of confidentiality.

18. Restorix had no right to disclose confidential information not pertaining to the work-related injury or illness at issue in the workers' compensation claim to Mrs. Slotylo-Shumylo.

19. On June 10, 2016, counsel for Sedgwick took the deposition of Kristina Mooney, who testified she was the office administrator of Restorix while Plaintiff was a patient. Ms. Mooney testified that she remembered the telephone call from the office administrator, but that she did not document it as she should have. Attached hereto is the excerpt from Ms. Mooney's deposition, marked as Exhibit 2.

20. On June 10, 2016, Ms. Mooney testified that she was instructed by her supervisor, Sabrina Briggs, to transfer the March 4, 2014 telephone call from the Sedgwick claims adjuster to Ms. Briggs, who would take care of the call.

21. Ms. Briggs did speak with Iryna Slotylo-Shumylo, disclosing information regarding Plaintiff's medical treatment and mental health.

22. Restorix, its physicians, and its employees have duty to not disclose Plaintiff's medical information without a release from the patient.

23. On June 10, 2016, upon being presented a full and complete copy of Plaintiff Jill C. Barber's medical file from Restorix, Ms. Mooney verified that there was no authorization for anyone to disclose any information to any third-party, including a workers' compensation claims adjuster.

24. On June 10, 2016, Ms. Mooney testified that upon completion of the telephone call with the Sedgwick claims adjustor, she observed Ms. Briggs call several other Restorix employees into her office and inappropriately laugh and joke about the Plaintiff's mental state.

25. Through discovery in the federal case, Plaintiff was able to obtain the Restorix "Patient Dashboard Communication" internal call log regarding Plaintiff. Attached hereto is an excerpt of the Dashboard Communications log, marked as Exhibit 3.

26. The March 4, 2014 telephone call with the Sedgwick claims adjuster was not documented.

27. The only call documented on March 4, 2014 was a call from Ms. Barber herself.

28. Defendant's failure to document the call with Mrs. Slotylo-Shumylo is in violation of Restorix policies.

4

29. Confidential information under W. Va. Code §27-3-1(a) is defined as " the fact that a person is or has been a client or patient, information transmitted by a patient or client or family thereof for purposes relating to diagnosis or treatment, information transmitted by persons participating in the accomplishment of the objectives of diagnosis or treatment, all diagnoses or opinions formed regarding a client's or patient's physical, mental or emotional condition, any advice, instructions or prescriptions issued in the course of diagnosis or treatment, and any record or characterization of the matters hereinbefore described."

30. The information disclosed by Restorix to Mrs. Slotylo-Shumylo was confidential information as considered under W.Va. Code §27-3-1(a).

31. The only way for a patient such as the Plaintiff, to waive their right to confidentiality under W. Va. Code §27-3-1 is through a signed written authorization for disclosure of such confidential information.

32. W. Va. Code §27-3-1 is not pre-empted by HIPPA and in fact offers more protection than HIPPA.

33. W. Va. Code §27-3-1 is not pre-empted by HIPPA and in fact offers remedies not considered under HIPPA.

34. Defendant, Restorix did not have the signed written consent or authorization of Plaintiff, Jill Barber, or of her legal guardian to transmit or release confidential information under W. Va. Code §27-3-2.

35. Neither Plaintiff, nor Plaintiff's counsel, waived Plaintiff's right to confidentiality of Plaintiff's confidential information under W. Va. Code. 27-3-1.

5

36. No Court issued a court order finding that the confidential information disclosed by Camden Clark was sufficiently relevant to any proceeding before the court to outweigh the importance of maintaining the confidentiality established by W. Va. Code §27-3-1.

37. The Defendant did not attempt to gain a written consent or authorization from Ms. Barber regarding her mental health information or any information not pertaining to the work-related injury or illness at issue in the workers' compensation claim.

## COUNT I: WRONGFUL DISCLOSURE OF MEDICAL OR MENTAL HEALTH CONFIDENTAL INFORMATION UNDER W.VA. CODE §27-3-1

38. Plaintiff alleges and incorporates all paragraphs of this complaint by reference hereto as if set forth verbatim.

39. Restorix is liable for the actions of its agents, servants, and employees, including any breach of confidentiality or breach of fiduciary duty.

40. Defendant, Restorix, had both and statutory and common law duty to restrict access to Plaintiff's confidential health and medical information as defined under W. Va. Code §27-3-1.

41. Defendant, Restorix, disclosed confidential information to Mrs. Slotylo-Shumylo, in contravention of W. Va. Code §27-3-1, breaching Defendant's statutory and common law duty to Plaintiff.

42. Defendant, Restorix, disclosed confidential information to Mrs. Slotylo-Shumylo, without a court order finding that the information is sufficiently relevant to a proceeding before the court to outweigh the importance of maintaining the confidentiality established by W. Va. Code §27-3-1.

43. Defendant, Restorix, did not have Plaintiff's consent, in writing or otherwise, to disclose any confidential information, including any confidential information not pertaining to the work-related injury or illness at issue in the workers' compensation claim to Mrs. Slotylo-Shumylo.

44. As a direct and proximate result of Restorix's wrongful disclosure, Plaintiff has been irreparably harmed.

45. As a direct and proximate result of Restorix's wrongful disclosure, Plaintiff has suffered extreme emotional distress.

46. As a direct and proximate result of Restorix's wrongful disclosure, Plaintiff has suffered extreme aggravation, inconvenience, and annoyance.

47. Restorix's aforesaid conduct was negligent or was willful, wanton, reckless and shocking regarding Defendant's duty to protect and preserve the confidentiality, privacy, and dignity of patients, including the Plaintiff, and justifies and award of compensatory and punitive damages against Defendant.

## COUNT II – BREACH OF FIDUCIARY DUTY AND CONFIDENTIALITY

48. Plaintiff alleges and incorporates all paragraphs of this complaint by reference hereto as if set forth verbatim.

49. West Virginia law provides that medical professionals have a fiduciary duty with their patients, and such duty includes protecting the confidentiality of the patients health information.

50. West Virginia law provides that medical information and mental health records are confidential in nature and that the disclosure of the information contained in such records

7

or the records themselves is unlawful without, *inter alia*, a written authorization for the release of the information, a statutory exception allowing disclosure and/or a court order.

51. Restorix, as a medical provider, and its employees are subject to the abovementioned duty.

52. Certain Restorix employees, individually and/or jointly, intentionally, or at least negligently, disseminated and disclosed Plaintiff's medical or mental health information to third parties who had no right to the information.

53. Restorix is liable for the actions of its agents, servants, and employees, including the breach of confidentiality described above.

54. As a direct and proximate cause of Restorix's actions, the Plaintiff suffered permanent and irreparable harm.

55. As a direct and proximate result of Restorix's wrongful disclosure, Plaintiff has suffered extreme emotional distress.

56. As a direct and proximate result of Restorix's wrongful disclosure, Plaintiff has suffered extreme aggravation, inconvenience, and annoyance.

## COUNT III: NEGLIGENCE

57. Plaintiff alleges and incorporates all paragraphs of this complaint by reference hereto as if set forth verbatim.

58. Restorix had a duty to hire employees who are competent and discreet.

59. Restorix had a duty to adequately and properly supervise its employees.

60. Restorix had a duty to train employees regarding the restriction of access to patient's medical records and the information contained therein.

61. Restorix had a duty to restrict the dissemination, by its employees, of patient's medical records and the confidential information contained therein.

8

62. Restorix had a duty to restrict what information is given to the employer and that disclosed information is limited to the work-related injury at issue in the worker's compensation claim.

63. Restorix employee or employees, improperly disclosed confidential medical information that was not related to the injury at issue in the worker's compensation claim.

64. Such medical information was confidential, and was not to be disclosed, under West Virginia statutory and common law.

65. Restorix knew or should have known that its employees, individually and/or acting with other employees, disseminated and disclosed confidential information to Mrs. Slotylo-Shumylo, who had no right to the information.

66. Restorix, through its employees, breached the duty of physician – patient privilege of confidentiality and in so doing injured the Plaintiff.

67. Restorix, through its employees, breached West Virginia statutory and common law duties of confidentiality and in so doing injured the Plaintiff.

68. As a direct and proximate result of Restorix's wrongful disclosure, Plaintiff has been irreparably harmed.

69. As a direct and proximate result of Restorix's wrongful disclosure, Plaintiff has suffered extreme emotional distress.

70. As a direct and proximate result of Restorix's wrongful disclosure, Plaintiff has suffered extreme aggravation, inconvenience, and annoyance.

9

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

71. Plaintiff alleges and incorporates all paragraphs of this complaint by reference hereto as if set forth verbatim.

72. Restorix's employees, in inappropriately disseminating and disclosing Plaintiff's confidential medical records to a third party, who had no right to the information, acted in an extreme and outrageous manner toward the Plaintiff in committing intentional, malicious, and reckless acts against him.

73. Restorix is liable for the actions of its agents, servants, and employees, including the intentional, reckless, and malicious acts described above.

74. Restorix knew or should have known their employee's actions and disclosures violated the laws of West Virginia.

75. Restorix knew or should have known about their employee's actions.

76. Restorix knew or should have known that the intentional, malicious, and reckless acts as described about would cause the Plaintiff to suffer emotional distress and other injuries.

77. As a direct and proximate cause of Restorix's inflection of emotional distress, the Plaintiff suffered permanent and irreparable harm.

78. As a direct and proximate result of Restorix's wrongful disclosure, Plaintiff has suffered extreme emotional distress.

79. As a direct and proximate result of Restorix's wrongful disclosure, Plaintiff has suffered extreme aggravation, inconvenience, and annoyance.

**WHEREFORE**, Plaintiff, Jill C. Barber demands judgment against Defendant, Restorix and seeks damages as set forth herein including: indignity, embarrassment, humiliation, aggravation, annoyance and inconvenience, emotional distress, and mental anguish; and for punitive damages; and an award of attorney's fees incurred in bringing this action; plus interest on all damages, including but not limited to pre-judgment and post-judgment interest at the statutory rate; and for such other and further relief that the Court may deem just and proper.

## PLAINTIFF DEMANDS A TRIAL BY JURY ON

## EACH COUNT OF THIS COMPLAINT

JILL C. BARBER
BY COUNSEL

James D. McQueen, Jr. (WVSB#2507)
Anthony E. Nortz (WVSB#12944)
McQueen Davis, PLLC
Century Bldg., Suite 200
314 Ninth Street
Huntington, West Virginia 25701
Phone: 304-522-1344
Email: jmcqueen@mcqueendavis.com
Email: anortz@mcqueendavis.com

and

Christopher J. Heavens
Heavens Law Firm, PLLC
2438 Kanawha Boulevard, East
PO Box 3711
Charleston, WV 25337
Phone: 304-346-0464
Email: chris@heavenslawfirm.com

*Counsel for Plaintiff*

11

```
                          J Barber File notes.txt
===========================================================================

------------------------------- NOTES -------------------------------------

Event/Clmnt/Claim    Date       Tp Sb Examiner
-----------------    --------   -- -- ---------

                                To:                 Attn: Kristina at
                                304-399-7451
                                Subject:            Claim# 30120972735-0001
                                BARBER, JILL C - Treatment Authorization
                                Result:             The transmission was
                                successful.
                                Explanation:        All Pages Ok
                                Pages Sent:         2
                                Connect Time:       0 minutes, 46 seconds
                                Transmit Time:      03/04/2014 10:57
                                Transfer Rate:      14400
                                Status Code:        0000
                                Retry Count:        0
                                Job Id:             4670
                                Unique Id:
                                MEM2FX03_SMTPFax0_1403041657126469
                                Fax Line:
                                Fax Server:         MEMFAX02

                                DCN#  562014030406693
                                [Time Note Created :10:57 AM ]
---------------------------------------------------------------------------
8263514295-0001-01  03/04/2014  CM      IRYNAS
                                Spoke with CM, explained that we are not
                                authorizing sx with Dr. Yoak at this time. We
                                will refer her to a specialist to rule out dx.
                                CM states that she was seen at Mayo Clinic and
                                they told her she does not have PG (states she
                                was seen on 01/06/14). She went to Mayo Clinic
                                in FL.

                                [Time Note Created :10:51 AM ]
---------------------------------------------------------------------------
8263514295-0001-01  03/04/2014  MD      IRYNAS
                                Called the office of Dawn L MacFarland MD
                                (304-399-7450) in regards to the letter dated
                                12/17/13 - DCN#5220131217021416. Spoke with
                                Kristina who stated that the claimant was last
                                seen on 12/17/13. Jill Barber asked Dr. Dawn
                                MacFarland to write that letter because she
                                wanted to be sent to another surgeon out of
                                state. The letter does not state anything
                                about the surgery (but apparently the purpose
                                was for the surgery)

                                She has been seen by different physicians at
                                St. Mary's Hospital and they believe that it is
?Date: 11/06/2014 11:21am                User: tconstan                Page:   83
===========================================================================
Claim Number : 30120972735-0001                          Date Loss : 09/24/2012
Client       : 2635      - Family Dollar Stores, Inc.
Account      : 26350002  - Store Locations
Unit         : 02796     - Store 02796
Claimant     : BARBER, JILL C
===========================================================================
                                   Page 81
```

CONFIDENTIAL

SEDGWICK - 09888

J Barber File notes.txt

```
------------------------------------- NOTES -------------------------------------
Event/Clmnt/Claim  Date         Tp Sb Examiner
```

more psychological and no one wants to see her. She was asking for a referral and that is why Dr. MacFarland wrote the letter. There is, nothing they can do, they believe it is self inflicting. They don't have any records from Mayo Clinic.

Explained that we will authorize a one-time consultative visit with a specialist to rule out/ confirm dx. Kristina will speak with Dr. Dawn MacFarland to find out if they can refer her to a specialist.

[Time Note Created :10:49 AM ]

```
B263514295-0001-01 03/04/2014 FS    IRYNAS
                                    OBC DCN#  562014030406693
```

Sedgwick Claims Management Services
P O Box 14517
Lexington, KY 40512-4517
Phone: (215)231-3900
Fax:   (215)231-3800

March 4, 2014

JILL C. BARBER
1429 BEECH ST
HUNTINGTON, WV 25701

Employer:Family Dollar Stores of West Virginia, I

Employee:JILL C. BARBER
Claim No:30120972735-0001
Date of Loss:09/24/2012
JCN: 2013010107

CLAIM DECISION (MEDICAL AUTHORIZATION DECISION) - PLEASE READ CAREFULLY

Dear Ms. BARBER,

This letter is to advise you that the request from Dr. Dawn L MacFarland MD to be seen by a specialist for consultation to confirm suspected diagnosis of pyoderma gangrenosum is approved.

| ?Date: 11/06/2014 11:21am | User: tconstan | Page: 84 |
|---|---|---|

```
Claim Number : 30120972735-0001                        Date Loss : 09/24/2012
Client       : 2635       - Family Dollar Stores, Inc.
Account      : 26350002   - Store Locations
Unit         : 02796      - Store 02796
Claimant     : BARBER, JILL C
```

Page 82

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JILL C. BARBER

    Plaintiff,

v.                                   Case No. 3:14-cv-27349

SEDGWICK CLAIMS MANAGEMENT
SERVICES, INC.,

    Defendant.

DEPOSITION OF KRISTINA MOONEY

    On the 10th day of June 2016, beginning at approximately 10:13 a.m., at the offices of Betler's Reporting & Legal Video Services, 523 Seventh Street, Huntington, West Virginia, before, Melanie Smith, Court Reporter and Notary Public, appeared KRISTINA MOONEY, Witness, who being by me first duly sworn, gave her oral deposition in the causes pursuant to notice of counsel and for the respective parties as hereinafter set forth.

BETLER'S REPORTING & LEGAL VIDEO SERVICES, LLC

523 SEVENTH STREET

HUNTINGTON, WEST VIRGINIA 25701

(606) 329-2154 * (304) 522-9637 * (304) 345-9891

BETLER'S REPORTING & LEGAL VIDEO SERVICES, L
(304) 522-9837      www.brlvs.com

EXHIBIT 2

1  Q.  No. Read it to yourself.

2  A.  Okay. Okay, I've read it.

3  Q.  Okay. I want to ask you to notice that this
4  entry was made by Ms. Slotylo at March 4, 2014.

5  A.  Uh-huh.

6  Q.  And, as I've previously pointed out to you, you
7  did not make an entry on the --

8  A.  Right.

9  Q.  -- wound care clinic dashboard system that day?

10 A.  Uh-uh.

11 Q.  Should you have made an entry if indeed you
12 talked to this lady on that date?

13 A.  I actually remember this. Once they -- because I
14 didn't remember anything about the patient until I just
15 read this note.

16 Q.  Uh-huh.

17 A.  And now I do remember, and yeah, I definitely
18 should have wrote a note to back myself up, but I
19 specifically remember telling Sabrina, transferring the
20 call to her and her telling me that she'll take care of
21 it.

22 Q.  So the entry on there to Sabrina, that Sabrina
23 made, was actually a call that you received and
24 transferred to her?

1   A.   Well, on the 4th she says that she received a
2   call from patient.
3   Q.   Okay.
4   A.   So she didn't --
5   Q.   So that's from patient?
6   A.   Yeah.
7   Q.   Okay. So she didn't record either that she --
8   A.   Didn't record that she had spoke to them.
9   Q.   -- spoke to this lady?
10  A.   And again that is from memory, but I remember
11  now, once I see that it says more psychological and no one
12  wants to see her, only because I remember -- the way the
13  office was set up and my area and in reference to
14  Sabrina's office, if her door was open, very easily in
15  that hollow hallway you could hear everything.
16  Q.   Uh-huh.
17  A.   And I do remember her and bringing Danielle and
18  Tammy all into the room and laughing and talking about her
19  being -- the patient being crazy, and she was digging at
20  her arm and then saying that the wound was her just
21  digging in her arm because she wanted to make it worse
22  than it was because she didn't want to have to work.
23  Q.   Okay. So you overheard --
24  A.   But you're right, I should have put a note in

1  there, in the system that said I transferred a call to
2  her, and that is an error on me.
3      Q.  Okay. Well, it appears that Ms. Slotylo is
4  talking to you as the source of the information that she
5  put in her chart.
6      A.  It certainly appears that way, yes.
7      Q.  Do you deny that you told her what she says you
8  told her?
9      A.  I would have not. Again, Sabrina was very clear
10 on my role there, and in no way whatsoever would I have
11 advised or had an opinion of a patient or anything because
12 she was very clear that was not my place. I'm a single
13 mother, I needed my job, and I can assure you I never
14 would have spoke of a patient that way. For one,
15 professionally, I wouldn't have spoke of a patient that
16 way.
17     Q.  Well, you realize --
18     A.  But I wouldn't be clinical; so that wouldn't have
19 ever been my place.
20     Q.  You realize that it would be highly improper, if
21 not illegal, for you to reveal to a third party that the
22 physicians at St. Mary's Hospital believe that it is --
23     A.  Absolutely.
24     Q.  -- more psychological and no one wants to see

```
 1   her?
 2       A.   Oh, yeah, that's completely --
 3       Q.   That would be absolutely forbidden, right?
 4       A.   Oh, yeah, absolutely. For one, I, in no way in
 5   my scope of practice now nor there, would be making an
 6   opinion or assumption. And, to me, I look at that note
 7   and what they said about there, that's someone else's
 8   clinical opinion that it's more psychological that's not
 9   substantiated in any way, and I absolutely don't conduct
10   business that way no matter where I work.
11       Q.   Okay.
12       A.   And in no way whatsoever would, in any scope of
13   practice or role that I've played anywhere, make an
14   assumption like that. That is in no way my place.
15       Q.   You do specifically remember that --
16       A.   I remember the whole thing now. That clicked it
17   in for me.
18       Q.   Well, let me finish my question. Do you remember
19   that you referred Ms. Slotylo to Sabrina Briggs?
20       A.   Yes.
21       Q.   Okay. So Sabrina Briggs, you know for a fact,
22   talked to Ms. Slotylo about Ms. Barber?
23       A.   I don't recall this physician's name that you're
24   speaking of. I do recall the situation and somebody
```

| Date | Staff | Note | Type | | | | | |
|---|---|---|---|---|---|---|---|---|
| 3/12/2014 08:00 | Mooney, Kristina | to be seen, if we would schedule her an appt. I explained that we had referred to the pt to a specialist who per the patient had referred her to a dermatologist. I told him that we do not have a dermatologist at the wound center, therefore the pt would probably be better served by seeing a dermatologist as recommended, however, the final decision would be left to the treating physician and/or our Medical Director. Mr McQueen stated he was unaware of the dermatology referral and asked if he sends a request for records if we would send our records to him. I told him we would, with a proper release form. He also asked if Dr MacFarland is an employee of the Wound Center and I explained that she is not. rec'd message from Jim McQueeen requesting to speak to Dr MacFarland. I returned the call to his office and requested a release of information. | Incoming Message | No | No | No | Edit | Delete |
| 3/6/2014 13:34 | Mooney, Kristina | pt called to schedule appt I advised dr macfarland ref her to mayo clinic for transfer of care we can not make appt at this time | Incoming Call | No | No | No | Edit | Delete |
| 3/4/2014 12:04 | Briggs, Sabrina | Rec;d call from pt stating her case worker at Workers Comp has denied her surgery and is referring her to the Mayo clinic, however, she has already been to the Mayo clinic. Pt wants Case Worker to speak to Dr MacFarland. I explained that she needs to get a copy of her records from the Mayo Clinic for her Case Worker, that we cannot re-release records. She verbalized understanding. | Incoming Call | No | No | No | Edit | Delete |
| 2/25/2014 16:21 | Lewis, Danielle | Patient called stating that WC referred her to dermatologist who then sent her to Dr. Yoak, surgeon at Marietta Memorial Hospital. Patient states Dr. Yoak wants to do surgery and has a plan but patient wanted to see if Dr. MacFarland would refer her to surgery here at St. Marys because patient "trusts Dr. MacFarland". I discussed this with Dr. MacFarland and she states that if surgrey has already seen patient here and did not wish to do surgery. Dr. MacFarland states that if Dr. Yoak has a plan than she needs to keep going to him. | Incoming Call | No | No | No | Edit | Delete |

EXHIBIT 3